IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:26-MJ-78 |
| | ) | |
| CHRISTOPHER NEAL MISHIK, | ) | **UNDER SEAL** |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT AND AN ARREST WARRANT**

I, Olivia Temrowski, a Special Agent of the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been so employed since 2020. As part of my duties as a Special Agent, I am currently assigned to the FBI Washington Field Office's Child Exploitation and Human Trafficking Task Force ("CEHTTF"). In my current assignment, I investigate violations of federal law, including the online sexual exploitation of children. This includes violations pertaining to the illegal possession, receipt, distribution, transmission, advertisement, and production of material depicting the sexual exploitation of minors and coercion and enticement of minors to engage in illegal sexual activity. I hold a Master's Degree in Social Work from the University of Michigan and am a Licensed Master of Social Work. I am a graduate of the FBI Academy in Quantico, Virginia where I received extensive training in federal law and various investigative methods. I have had numerous hours of professional law enforcement training in the detection and investigation of criminal offenses. I

have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of subpoenas, affidavits, criminal complaints, search warrants, and arrest warrants. As a federal agent, I am authorized to investigate violations of laws of the United States and, as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

2. I also have training and experience in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256), including computer media. Through my experience and training, I can identify child pornography when I see it.

3. The facts and information in this affidavit are based upon information that I obtained during this investigation and information that has been provided to me by other law enforcement sources. Since this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this application.

4. I submit this affidavit in support of a criminal complaint and arrest warrant charging CHRISTOPHER NEAL MISHIK, hereinafter the "SUBJECT" a resident of Herndon, Virginia, which is within the Eastern District of Virginia, with violations of Title 18 U.S.C. § 2251(a) and (e), Sexual Exploitation of a Child and Attempted Sexual Exploitation of a Child (SUBJECT OFFENSES). For the reasons set forth below, I submit that probable cause exists to believe that between approximately July 24, 2024 and July 25, 2024, the SUBJECT employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the

purpose of producing a visual depiction of such conduct and for the purpose of transmitting a live visual depiction of such conduct.

## STATUTORY AUTHORITY

5. Title 18 U.S.C. § 2251(a) prohibits any person to employ, use, persuade, induce, entice, or coerce any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

6. Title 18 U.S.C. § 2252(a)(2) prohibits any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

7. Title 18 U.S.C. § 2422(b) prohibits any person from using the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any minor to engage in any sexual activity (including production of child pornography) for which any person can be charged a criminal offense, or attempts to do so.

8. Title 18 U.S.C. § 2252(a)(4)(B) prohibits any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

**DEFINITIONS**

9. The following definitions apply to this Affidavit:

a. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

b. "Child pornography," or "child sexual abuse material (CSAM)" as used herein, means any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual

depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

c. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, flash drives or thumb drives, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f. "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the internet service provider (ISP) assigns a different unique number

to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i. "Records," "documents," and "materials," as used herein, include all information recorded in any form and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals or pubic area of any person.

k. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

l. A "tablet" is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless

communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

m. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

n. A "wireless telephone," or mobile or cellular telephone, is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

o. "Wireless routers" create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an

individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

## STATEMENT OF PROBABLE CAUSE

### Background

10. On July 7, 2025, the Federal Bureau of Investigation (FBI) Washington Field Office received a lead [redacted]. The FBI [redacted] case investigated a group of users [redacted] engaging in online sexual exploitation of children (hereinafter THE TARGET GROUP). The members of THE TARGET GROUP appear to have coordinated the targeting of these minors to produce child sexual abuse material (CSAM) [redacted]

11. The FBI [redacted] investigation led to a particular user within that group who identified [redacted] as being one such user in THE TARGET GROUP.

A search warrant for that account revealed communications this user was having with other members of THE TARGET GROUP.

12. As subjects involved in THE TARGET GROUP were positively identified, legal process was served on various subject accounts and electronic devices. A significant amount of child sexual abuse material (CSAM) depicting multiple victims, many of which have been identified as true minors, has been located throughout THE TARGET GROUP members' devices and [redacted] accounts.

**Identification of THE SUBJECT**

13. The [redacted] (hereinafter referred to as SUBJECT ACCOUNT 1) and [redacted]" (hereinafter referred to as SUBJECT ACCOUNT 2) were both identified usernames located in THE TARGET GROUP.

14. In September and October of 2025, various legal process was served to confirm identification and attribution of the SUBJECT to the SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2. For purposes of comparison, subscriber information was also obtained on [redacted] (hereinafter referred to as SUBJECT ACCOUNT 3). Both SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2 almost entirely utilized VPNs[1]. SUBJECT ACCOUNT 2 showed a login on a single occurrence (June 27, 2024) to IP address [redacted] The IP address was registered to the SUBJECT's residence.

15. This writer then performed a comparison of the IP address and/or what were believed to be likely VPNS across the multiple accounts to identify similarities. Of interest,

[1] A virtual private network (VPN) allows a user to anonymize their online traffic and location. A VPN routes a user's internet traffic through one of its servers where the data is encrypted. The server then forwards the traffic to the website, which acknowledges the VPN server's IP address rather than the user's device IP address.

[redacted], as well as email address chrismishik@gmail.com and Apple ID chrismishik@gmail.com all appeared to be associated with likely VPNs. Specific occurrences of the common VPNs with dates/times have been summarized in a table below:

| | IP Addresses (likely VPNs) and Connections | | |
|---|---|---|---|
| | **181.41.206.154** | **181.41.206.90** | **84.239.12.132** |
| [redacted] | 2024-12-30 16:20:48 UTC | 2024-11-24 04:39:09 UTC | 2024-10-22 04:27:12 UTC |
| [redacted] | 2024-12-30 16:16:52 UTC | 2024-11-23 16:26:56 UTC | 2024-10-22 17:59:43 UTC |
| **Google chrismishik@gmail.com** | 2024-12-30 15:35:42 UTC | 2024-11-22 20:42:04 UTC | 2024-10-21 18:28:29 UTC |
| **Apple chrismishik@gmail.com** | 2024-12-30 10:47:56 PT | 2024-11-22 21:14:43 PT | 2024-10-22 12:53:21 PT |

16. Further, the legal returns from [redacted] provided a Family Device ID (FDID) amongst the subscriber information obtained. An FDID is defined as a unique system-generated identifier shared by all [redacted] family of applications that are installed on the same physical device. All [redacted] accounts that are created on the same physical device will share an FDID. Located in the returns provided by [redacted] was FDID: 0F32C717-08C1-406E-B150-DE43BA5154AA, which was consistent across SUBJECT ACCOUNT 1, SUBJECT ACCOUNT 2, and SUBJECT ACCOUNT 3. All three accounts share the same FDID and appear to be accessed on the same physical device.

17. The Honorable Ivan D. Davis, Magistrate Judge for the Eastern District of Virginia, authorized a residential search warrant for the SUBJECT residence at [redacted]

Herndon, Virginia [redacted] Case No. 1:25-SW-928.[2] On November 14, 2025, Special Agents of the FBI executed these warrants and collected a total of three electronic devices belonging to the SUBJECT.

18. The primary device seized was the subject's personal Apple iPhone (IMEI: 351176562630619, model number A2483), which was removed from his right pants pocket. Upon conducting a forensic review of the operating system of the device, the user account was attributed to Apple ID: chrismishik@gmail.com and device phone number 202-860-7565. Further review revealed that [redacted], [redacted]" and [redacted], [redacted]" were both associated to the Apple Keychain[3] artifact of the device.

19. Additionally located on the SUBJECT's Apple iPhone were various files depicting CSAM, to include both images and videos. The subject's phone contained numerous videos of what appear to be [redacted] minor females. Often, the videos are innocuous and contain a young female dancing, singing, or making a trendy video with another young female. However, some of them appear to start innocent in nature later becoming sexual, and some are exclusively sexual in nature. For example, one video of three minor females begins with them laying on a bed chewing bubble gum. As they engage with the camera, two of the minors stand up and take off their pants, touch and spread open their vagina. In another video, a female removes her shorts, displays her vagina to the camera, and begins penetrating herself with some sort of long, thin object.

---

[2] The "MV" minor victim identification numbers in this complaint affidavit and 1:25-SW-928 affidavit are not attributed to the same individuals.

[3] The Apple Keychain is Apple's proprietary password manager that stores cryptographic keys and all user passwords, aside from the device passcode itself.

20. Also located on the subject's iPhone were images of CSAM consistent with an infant/toddler aged child. One of the images reveals a toddler's vagina sitting directly in front of what appears to be an adult female's clitoris. Another image displays a toddler aged female who appears to be laying on a bed, her legs are held up and the image is taken from behind. The image's focus is a pen or marker inserted into her anus and another inserted into her vagina.

21. [redacted]

22. Additionally, and of particular concern, approximately three (3) images depicting CSAM are consistent with the age and gender of the SUBJECT's child in which your affiant observed to reside with the SUBJECT.

**TARGET GROUP Activity**

23. [redacted]

---

[4] The FBI is currently in the process of fully identifying this minor female.

[redacted]

25. [redacted]:

| Date/Time Frame | Sender | Content |
|---|---|---|
| [redacted] | | |
| | [redacted] | [redacted] ….. [redacted] … |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] … |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] …. |
| | [redacted] | [redacted] … |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] … |

---

[redacted]

[6] [redacted]

| | | |
|---|---|---|
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted]<br>. . . |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted]<br>. . . |
| | [redacted] | [redacted]<br>. . . |
| | [redacted] | [redacted]<br>. . .<br>[redacted]<br>. . .<br>[redacted]<br>. . .<br>[redacted]<br>. . .<br>[redacted]<br>. . .<br>[redacted]<br>. . . |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted]<br>. . . . |
| | [redacted] | [redacted] |
| | [redacted] | [redacted]<br>. . .<br>[redacted]<br>. . .<br>[redacted] |

| | | |
|---|---|---|
| | [redacted] | [An image of MV1 pulling her bra down, with closer and more focused image on her breasts]<br>… |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted]<br>…<br>[redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |

26. [redacted]” [redacted]

| Date/Time Frame | Sender | Content |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |

| | | |
|---|---|---|
| | [redacted] | Like dominated convinced or complimented convinced |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | [redacted] | [redacted] |
| | SUBJECT ACCOUNT 1 | [redacted] |

[redacted]

27. [redacted]

**<u>One-on-One Sexual Exploitation of MV1</u>**

28. In further review of SUBJECT ACCOUNT 2, this writer discovered a one-on-one conversation which took place on July 24, 2024 between the SUBJECT and MV1. The conversation was initiated by the SUBJECT and throughout the course of conversation, the SUBJECT appears to request that MV1 send him private images and videos consistent with what appear to be CSAM. See relevant portions of the conversation below:

| Date/Time Frame: | Sender | Content |
|---|---|---|
| 07/24/2024: 6:36:45 PM - 8:58:29 PM | | |
| | SUBJECT ACCOUNT 2 | Whatcha doing?<br>[redacted] |
| | MV1 | Nothing much<br>Yea<br>… |
| | SUBJECT ACCOUNT 2 | [redacted]<br>I'd love to see more of y [redacted] :)<br>Holy shit u r hot [emoji] |
| | MV1 | Thanks |
| | SUBJECT ACCOUNT 2 | Wow u should show all the time<br>R u ok with that?<br>Because u r gorgeous and the world needs to see u<br>…<br>Eveyone wants you to show some more :)<br>Will you please? |
| | MV1 | I will just show my tits. |
| | SUBJECT ACCOUNT 2 | You should squeeze them together in a video<br>…<br>Ok let's see<br>Wow<br>So amazing!<br>Can you squeeze them together with both hands? Just like smoosh them into each other<br>You are going to show everything? |
| | Mv1 | Yea |
| | SUBJECT ACCOUNT 2 | Yessss!<br>You are the hottest girl I have ever seen<br>What can I do to help? |
| | MV1 | I don't know |
| | SUBJECT ACCOUNT 2 | Do you want suggestions on what videos to send? |
| | MV1 | Maybe bend over then like smack my butt. |
| | SUBJECT ACCOUNT 2 | Yes! Do that now please [emoji]<br>…<br>Are you still there?<br>… |

| | | |
|---|---|---|
| | | Are you making the video cutie?<br>…<br>Can u send it to me [redacted] I can help build confidence<br>Amazing!<br>…<br>What happened to the video though? |
| | MV1 | I just forgot |
| | SUBJECT ACCOUNT 2 | Could you send it now?<br>[redacted]<br>It seems like you don't want to send that<br>I really love seeing your top off<br>Pull your panties to the side for a picture |
| | MV1 | Okay |
| | SUBJECT ACCOUNT 2 | [emoji] [emoji]<br>[redacted]<br>…<br>Would you send just me a pic? |
| | MV1 | Sure<br>[An empty text box appears that reads, [MV1's first name] sent an attachment] |
| | SUBJECT ACCOUNT 2 | Ong!<br>You are soooo hot!<br>How about a pussy pic?<br>Spread for me? |
| | MV1 | Okay |
| | SUBJECT ACCOUNT 2 | Show those pussy lips and spread with two fingers<br>If you want ? |
| | MV1 | Okay |
| | SUBJECT ACCOUNT 2 | You have the cutest pussy I have ever see.<br>Keep going please |

29. The SUBJECT resumed the conversation later that evening, continuing into the next day where the SUBJECT and MV1 discussed age. The relevant portion of the conversation can be found below:

| Date/Time Frame | Sender | Content |
|---|---|---|
| 07/24/2024 10:34:42 PM – 07/25/2024 12:55:07 | | |
| | SUBJECT ACCOUNT 2 | Hey beautiful<br>… |
| | MV1 | How old are you? Just asking. |
| | SUBJECT ACCOUNT 2 | Guess |
| | MV1 | 13 |
| | SUBJECT ACCOUNT 2 | Lol yeah nice<br>How old r u |
| | MV1 | Guess |
| | SUBJECT ACCOUNT 2 | 14 |
| | MV1 | OMG yes |
| | SUBJECT ACCOUNT 2 | Nailed it<br>You are so cute<br>…<br>What grade you in?<br>… |
| | MV1 | Yea I am going into 8th grade<br>What grade u in? |
| | SUBJECT ACCOUNT 2 | I'm also about to be in 8th |

30. After MV1 established her age and academic grade, the SUBJECT continued to request images and videos of MV1 which appear to represent CSAM. See relevant portions of the conversation below:

| Date/Time Frame | Sender | Content |
|---|---|---|
| 07/25/2024 5:37:13 PM – 8:36:57 PM | | |
| | SUBJECT ACCOUNT 2 | You are so hot [emoji]<br>Can I get a personal pics of just you for me :) |
| | MV1 | Sure |
| | SUBJECT ACCOUNT 2 | How about a video just for me :) of you flashing<br>Can you? |

| | | |
|---|---|---|
| | MV1 | Okay |
| | SUBJECT ACCOUNT 2 | Do you prefer talking privately [redacted] |
| | MV1 | Privately |
| | SUBJECT ACCOUNT 2 | Ok I wasn't sure if you liked talking to me privately or not<br>You send good pics :) |
| | MV1 | Thanks<br>… |
| | SUBJECT ACCOUNT 2 | Send me a pic of you bent over<br>That ok? |
| | MV1 | Yeah<br>[[MV1's first name] sent an attachment] |
| | SUBJECT ACCOUNT 2 | Oh I meant I wanted to see your butt [emoji]<br>Can you do that? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | Ok :) |
| | MV1 | [[MV1's first name] sent an attachment] |
| | SUBJECT ACCOUNT 2 | You have a nice ass |
| | MV1 | Thanks |
| | SUBJECT ACCOUNT 2 | Can I see it with your shorts off? |
| | MV1 | Sure<br>[[MV1's first name] sent an attachment] |
| | SUBJECT ACCOUNT 2 | Can I see it with panties off too<br>Would that be ok? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | Ok [emoji]<br>U there? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | Are you still sending? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | Would u rather do it on a video call? I can't join but I can still message you :) it could be fun<br>?<br>U there? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | What do u think about what I just said?<br>Sooooooooooo?<br>I am sad you aren't answering |
| | MV1 | I am still here |

| | | |
|---|---|---|
| | SUBJECT ACCOUNT 2 | But why aren't you answering?<br>Please [MV1's first name]<br>...<br>Would you prefer we send pics of video call? |
| | MV1 | Send pics |
| | SUBJECT ACCOUNT 2 | Ok send without any undies on and your legs spread<br>Would that be ok? |
| | MV1 | Yes |
| | SUBJECT ACCOUNT 2 | Do you like to play with it down there? |
| | MV1 | Sure |
| | SUBJECT ACCOUNT 2 | Let me see then<br>[MV1's first name]? |
| | MV1 | Yea |
| | SUBJECT ACCOUNT 2 | It doesn't seem like you want to send it<br>Is that true?<br>Can I see with your shirt off again?<br>So hot |

**Initial CAFI of MV1**

31. On April 7, 2025, MV1 underwent a Child and Forensic Interview (CAFI) when her victimization was first made known to law enforcement [redacted]. The above-mentioned chats had not yet been discovered, so the interviewer was unable to directly discuss MV1's chats with the SUBJECT. [redacted].

32. MV1 was shown screenshots from a video located of her with no shirt on, rubbing her breasts with one hand and holding the camera with the other. MV1 positively identified herself in these screenshots. Your affiant was able to compare the self-identified screenshots of MV1 with the CSAM sent to THE TARGET GROUP. Based upon the physical features of MV1, the username from which the images are sent from, and the background and other characteristics of

what appear to be her bedroom, the CSAM located in THE TARGET GROUP can be attributed to MV1.

**CONCLUSION**

33. Based on the foregoing, I submit that there is probable cause to believe that between on or about July 24, 2024 and July 25, 2024, CHRISTOPHER NEAL MISHIK knowingly violated Title 18 U.S.C. § 2251(a) and (e), Sexual Exploitation of a Child and Attempted Sexual Exploitation of a Child, and I respectfully request that a criminal complaint and arrest warrant be issued for the SUBJECT.

Respectfully submitted,

Olivia Temrowski

Olivia Temrowski, Special Agent
Federal Bureau of Investigation

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 41 via telephone on March 13, 2026.

The Honorable William F. Fitzpatrick
United States Magistrate Judge